IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANICE WARD CHANCEY, | ) | |
| | ) | |
| CLAIMANT, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-719-KOB |
| | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

MEMORANDUM OPINION

I. INTRODUCTION

On April 16, 2013, the claimant, Janice Ward Chancey, protectively applied for
supplemental social security income and disability insurance benefits because of her multiple
sclerosis and affective mood disorder. The Commissioner denied the claims initially on July 18,
2013, because of lack of evidence. The claimant timely requested a hearing before an
Administrative Law Judge, and that hearing took place on October 28, 2014. (R. 55, 109, 129).

In a decision dated January 30, 2015, the ALJ found the claimant disabled under Title
XVI and entitled to supplemental security income effective April 16, 2013. However, the ALJ
found the claimant not disabled under Title II because she was not disabled prior to her last
insured date of September 30, 2009. The claimant filed a timely request for a hearing before the
Appeals Council on March 31, 2015. The Appeals Council denied the claimant's appeal because

1

counsel's new evidence did not provide a basis for changing the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner on January 30, 2015.

The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court reverses the decision of the Commissioner and remands the case to the Commissioner for further proceedings. (R. 1-6, 14-16, 43).

## II. ISSUE PRESENTED

The claimant presents the following issue for review: whether the ALJ committed reversible error in failing to obtain a medical advisor at the hearing to establish the date of the plaintiff's onset of disability pursuant to SSR 83-20.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986)[1]; 20 C.F.R. §§ 404.1520, 416.920.

When an ALJ finds a claimant disabled, he must determine the onset date of that disability. *Caces v. Comm'r, Soc. Sec. Admin.*, 560 Fed. App'x 936, 939 (11th Cir. 2014). The onset date must have a "legitimate medical basis." *See* Titles II & XVI: Onset of Disability, SSR 83-20 (S.S.A. 1983). A claimant's disability onset must happen before the date the claimant was "last insured" to be entitled to disability benefits under Title II. The claimant's date last insured is the date that the claimant is eligible to receive Social Security Disability Insurance (SSDI) and depends on the date the claimant last worked. *See* 20 C.F.R. § 404.131.

If the ALJ must "infer" the onset date, because the medical record pre-dating the date last insured is sparse, he "should call on the services of a medical advisor" at the hearing to help

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), a supplemental security income case (SSI), applies the same sequence to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

determine the onset date. *See* SSR 83-20; *see also Caces*, 560 F. App'x at 939. (citing *March v. Massanari*, 265 F.3d 1065 (11th Cir. 2001)) (if the medical evidence is inadequate or ambiguous, then the ALJ must infer the onset date and adhere to SSR 83-20). When an ALJ fails to consult a medical advisor as required by SSR 83-20, he fails to develop a full and fair record and commits reversible error. *See Bailey v. Colvin*, 224 F. Supp. 3d 1249, 1256 (N.D. Ala. 2016).

## V. FACTS

The claimant was 59 years of age at the time of the ALJ's final decision; had completed the 12th grade; had past substantial gainful experience as an automobile rental clerk, a general clerk, a retail cashier, and a purchase order typist; and alleges disability based on multiple sclerosis and affective mood disorder (R. 18, 61, 101, 109).

### *Physical and Mental Impairments*

On May 24, 2002, the claimant visited St. Vincent's Hospital because of right vision loss. After taking an MRI of the claimant's brain, Dr. Robins J. Newton, a neurologist in the Radiology/Medical Imaging department, diagnosed her with right vision loss and multiple sclerosis on June 3, 2002. (R. 322-326).

In 2003, the claimant regained her vision, but could not return to work because she could no longer "stand" full time nor could she "interact with people" and "remember things." On April 4, 2003, Dr. Rebecca K. Lockhart, an internist at Birmingham Internal Medicine Associates, the claimant's family physician, wrote a medical note that opined the claimant should be limited to standing for three hours and sitting for three hours because of her multiple sclerosis. (R. 89, 97, 521).

Medical records from Dr. Mark Wilson, an internist, and CRNP Janet McCary of Cooper Green Mercy Hospital, showed that the claimant had restless leg syndrome, anxiety, and melanoma of the right arm in 2006. (R. 549).

From 2007 to 2008, the claimant sought mental health counseling with Anna Orcutt and Ellery Berryhill, both are therapists at Oasis, A Women's Counseling Center, for trouble concentrating and depression. For these conditions, Oasis prescribed Zovirax (an antiviral), Elavil (to help her sleep), Buspar (for her RLS), and Naprosyn (for her pain). (R. 522-547).[2]

On August 26, 2008, the claimant complained that the "SSRI's work opposite on me – make me more anxious and more depressed." Birmingham Health Care diagnosed the claimant with anxiety and depression.[3] On October 8, 2008, the claimant sought treatment from Dr. J. Morgan[4] with Birmingham Health Care for short term memory loss and restless leg syndrome, for which Dr. Morgan prescribed Zoloft and Flexeril. (R. 405-417).

On May 7, 2009, the claimant met with Dr. Wilson and Nurse McCary because of the ineffectiveness of her depression medication. She also requested more restless leg syndrome medication, and Dr. Wilson prescribed more Flexeril. The claimant declined a referral to a psychiatrist.[5] (R. 463).

There are no relevant medical records between May 7, 2009 and June 20, 2013.[6]

After she filed her claim, on June 20, 2013, the claimant met with Dr. James Davis Blake, a family medicine physician, for a disability physical at the request of the Disability Determination Service. Dr. Blake found that the claimant had a normal range of motion globally,

---

[2] The name of the prescribing physician cannot be found in the record.
[3] The physician's signature is illegible.
[4] The full name of this physician cannot be found in the record.
[5] The record does not indicate why she declined the psychiatrist referral.
[6] The record does not indicate why there are no medical records during this time.

no abnormalities during the neurological examination, and no fatigue, dizziness, or visual symptoms. (R. 398-400).

Again at the request of the Social Security Administration, on June 24, 2013, the claimant went to a psychological examination with psychologist Dr. William B. Beildeman. Dr. Beildeman assessed that the claimant had dysthymic disorder and probable mild generalized anxiety disorder, and could remember simple instructions. (R. 38, 402-404).

On July 7, 2013, the claimant visited Dr. Shrin Banu, an internist at Cooper Green Mercy Hospital, complaining about her restless leg syndrome. Dr. Banu treated the claimant for RLS and prescribed medication for it. (R. 38, 429).[7]

On July 18, 2013, at the request of the Disability Determination Service, Dr. Robert Estock, a psychiatrist, evaluated the claimant. Dr. Estock determined that the claimant's medical evidence did not show that her anxiety, depression, or MS were severe impairments. He opined that she had a mild restriction in activities of daily living, and mild difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace. (R. 40, 116-117, 125-126).

On November 15, 2013, the claimant visited Dr. Sarah Perez, a neurologist at Cooper Green Mercy Hospital, to whom Dr.Banu had referred her on July 7, 2013 for a consultation, complaining about her restless leg syndrome. Dr. Perez determined that the claimant did have some transient symptoms of numbness and weakness in her legs because of a relapse of MS and ordered an MRI. Dr. Perez also found the exam overall to be nonfocal. (R. 38, 423, 425).

The results of the claimant's MRI of her thoracic and lumbar spine and her brain revealed that her brain showed severe periventricular T2 signal malleus bilaterally (brain disease),

---

[7] The record did not list the exact prescription.

compatible with demyelinating disease (damage to the protective covering that surrounds nerve fibers in the brain and spinal cord), and her cervical spinal cord showed abnormal signals within her spinal cord at C2 and C4. (R. 482).

On April 11, 2014, the claimant saw Dr. Ayaz Khawaja, a neurologist at Cooper Green Mercy Hospital, for a neurological follow-up appointment. Dr. Khawaja determined that the claimant had clinically isolated Multiple Sclerosis syndrome and refilled her Flexeril (for her RLS). The claimant also discussed the potential for a prescription for anxiety and depression. On May 30, 2014, Dr. Cristina Wohlgehagen, a neurologist at Cooper Green Mercy Hospital, prescribed Celexa for the claimant's anxiety and depression. (R. 39, 475-477).

On September 12, 2014, the claimant saw Dr. Luke Smelser, a neurologist at Cooper Green Mercy Hospital, for a neurological follow up visit for potential MS. She complained of anxiety, fatigue, tingling in her left leg below the knee that sometimes goes numb, minor cognitive deficits, occasional blurry vision, and mild slurred speech. Dr. Smelser prescribed Acyclovir, Citalpram, and Flexril for the claimant's word finding difficulties, mild slurring, and stress induced memory difficulties. (R. 39, 504-505).

*ALJ Hearing*

At the ALJ hearing on October 28, 2015, the claimant initially alleged an onset date of May 2, 2002, then amended her alleged onset date to January 1, 2007, then to September 1, 2009, because of a lack of medical records and because the claimant had been employed during part of this time. (R. 22, 55, 60, 76).

The claimant testified about her daily limitations. The claimant testified that she has a driver's license but gets nervous driving on the interstate and on backroads. She can cook simple

meals, vacuum, do laundry, sweep, mop, change bed sheets, go to the mall for two hours, go to church at least once a month, and visit her sister once a week who lives five minutes from her. She cannot do yard work, plant flower pots, or walk a mile. Since 2002, she has had problems getting along with friends and family because of her short temper. (R. 65-71).

The claimant testified that she can only stand for two hours and sit for two hours for an entire day because of numbness; she can only lift up to 10 pounds; she cannot squat, kneel or crawl. She has problems with her right hand because of an operation on her right arm in December 2004 for melanoma. The claimant testified that she had these same limitations before January 1, 2013. The claimant rated her pain as a six or seven on a ten point scale because of her right foot being asleep; her pain is typically rated as an eight on a ten point scale. (R. 81-84).

The claimant testified about how she deals with her disability. The best position for her is siting with her feet propped or laying down, and her worst position is standing. The claimant testified that Flexeril, prescribed for her restless leg syndrome, works well to relieve her pain, but she continues to have numbness and tingling in her legs; because the Flexeril makes her drowsy, she only takes it at night. She continues to have symptoms of anxiety and depression even though she takes her medication. She testified that her right eye also gets blurry because of her MS. The claimant testified about her diagnosis of MS and sudden onset of blindness in her right eye in 2002, which is why she stopped working for Hertz. The claimant testified that when her sight came back, she tried to get her job at Hertz back but could not because the doctors only wanted her to work part-time because she could not stand for long periods of time. The claimant testified that she does not take any medication for multiple sclerosis. From 2004 to the end of

2009, the claimant testified that most of her medical visits dealt with her dermatology issue. (R. 73, 78, 84, 87-89, 99).

The claimant testified about why she cannot perform her past work history. When she worked part-time at the hardware store as a cashier, she had to stand and would get tired; she could not do the work at the hardware store and her employer asked her to resign. When she worked at the Chicago Title company, she alternated from sitting to standing for about six weeks. She just left her assistant job with her sister in February 2014 because the amount of tasks her sister gave her made her too nervous to accomplish them. The claimant testified that she could not do any of her previous jobs because she cannot interact with people, remember things like instructions, and stand too long because of cramps. (R. 61, 89-91, 96-97).

Also, the claimant testified that, in the summer of 2011, she went to her niece's wedding in Mexico. In October 2012, the claimant testified that she went to the beach with her sister for two or three days. (R. 78-79).

The vocational expert Donald Parsons testified about the claimant's past relevant work as an automobile rental clerk, classified as light, semiskilled work; a general clerk, classified as light, semiskilled work; a retail cashier, classified as light, unskilled work; and a purchase order typist, classified as sedentary, semiskilled work. Mr. Parsons testified that the claimant could not do any of her previous work or any unskilled jobs because of absenteeism. (R. 101, 106).

The ALJ asked Mr. Parsons to assume that the claimant can stand or walk for eight hours in an eight hour workday, having to change positions every two hours; can lift or carry 20 pounds occasionally, and 10 pounds frequently; can never climb a ladder, rope or scaffolding; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch and crawl; can

occasionally work at unprotected heights and around hazardous machinery. Mr. Parsons responded that the claimant could perform the claimant's past relevant work if she had a 10 or 15 minute break every two hours. (R. 101-102).

In his second hypothetical, the ALJ asked Mr. Parsons to assume all of the prior limitations, with the additional limitation that the claimant can understand, remember and carry out only simple instructions. Mr. Parsons responded that the claimant could perform her past relevant work of the retail cashier job. The ALJ then asked Mr. Parsons if any additional unskilled occupations exist that the claimant could perform. Mr. Parsons responded that the claimant could be a merchandise price marker, classified as light and unskilled, with 3,900 full time jobs in the Alabama and 318,000 in the nation; an assembler, classified as light and unskilled, with 1,100 full time jobs in Alabama and 55,000 in the nation; and a night cleaner, classified as light and unskilled, with 1,600 full time jobs in Alabama and 136,000 in the nation. (R. 103-104).

In his third hypothetical, the ALJ asked Mr. Parsons to assume that the claimant can sit for eight hours in an eight-hour workday, having to change positions every two hours; can lift or carry ten pounds occasionally, and less than ten pounds frequently; can never climb ramps and stairs; can occasionally stoop kneel, crouch, or crawl; and can occasionally work at unprotected heights and around hazardous machinery. Mr. Parsons responded that the claimant could do her past relevant work as a purchase order typist. (R. 104).

In his fourth hypothetical, the ALJ asked Mr. Parsons to assume the same characteristics as the previous hypothetical and added that the individual can understand, remember and carry

out simple instructions. Mr. Parsons responded that the hypothetical would rule out the claimant's past relevant work.  (R. 104-105).

In his fifth hypothetical, the ALJ asked Mr. Parsons to assume an individual at the same age, educational background, and past relevant work experience of the claimant with the characteristics of all prior hypotheticals. The ALJ added that the individual must recline at least one hour in an eight hour work day. Mr. Parsons responded that no jobs existed for an individual with those limitations.  (R. 105).

The ALJ's last hypothetical asked Mr. Parsons to assume an individual at the same age, educational background, and past relevant work experience of the claimant with all characteristics of previous hypotheticals, with the additional limitation that the individual only can maintain concentration, persistence, and pace up to 80 percent of the time in an eight-hour work day. Mr. Parsons responded that no jobs existed for an individual with those limitations. (R. 105-106).


*ALJ Decision*

The ALJ rendered a partially favorable decision for the claimant on January 30, 2015. The ALJ found the claimant disabled under Title XVI of the Social Security Act and entitled to supplemental security income effective April 16, 2013. But, the ALJ found the claimant not disabled under Title II of the Social Security Act, thus not entitled to disability insurance benefits, because she was not disabled prior to her last insured date of September 30, 2009. (R. 29, 43).

The ALJ determined that the claimant met the insured status requirements of the Social Security Act through September 30, 2009, and that she had not engaged in substantial gainful activity since her amended onset date of September 1, 2009. (R. 25).

The ALJ determined that the claimant's multiple sclerosis, affective disorder with mixed anxiety, and depression were non-severe prior to September 30, 2009, her date last insured, but became severe beginning April 16, 2013. After hearing the claimant's testimony, considering her allegations, and reviewing the medical record, the ALJ found no evidence that the claimant's Multiple Sclerosis and other documented impairments more than minimally affected her ability to engage in basic work activities prior to April 16, 2013. (R. 26, 29).

In making his determination, the ALJ noted the claimant's relevant medical history. The ALJ analyzed the MRI of the claimant's brain from June 2002, which showed signs consistent with Multiple Sclerosis. The ALJ noted that, in May 2009, the claimant sought treatment for depression and anxiety at Cooper Green Mercy Hospital, at which time she denied any related symptoms from Multiple Sclerosis but received an assessment for restless leg syndrome and anxiety. (R. 26-27).

The ALJ heavily relied on the following medical opinions provided by state agency consultative psychological examiners: in June 2013, Dr. Beidleman opined that the claimant could remember simple instructions and in July 2013, Dr. Estock opined that the medical evidence did not show that the anxiety, depression, and MS alleged by the claimant were severe impairments. (R. 38, 40, 116-117, 125-126, 402-404).

In assessing the claimant's mental limitations, the ALJ assessed that, prior to April 16, 2013, the claimant only had mild limitations of her activities of daily living, social functioning,

13

concentration, and persistence, and had no episodes of decompensation. The ALJ relied on evidence that the claimant went to Mexico, the beach, spent time with friends, and reported no difficulties with performing every day activities. (R. 23, 31).

The ALJ found that beginning on but not prior to April 16, 2013, the claimant had severe impairments of multiple sclerosis and dysthymic disorder. He found that, since April 16, 2013, the claimant did not meet any of the impairments or combination of impairments listed under 20 CFR Part 404, Subpart P, Appendix 1. The ALJ determined that since April 16, 2013, the claimant had the residual functional capacity to perform light work, except that she can lift and/or carry twenty pounds occasionally and ten pounds frequently. The ALJ found that since April 16, 2013, the claimant has been unable to perform any past relevant work. (R. 26, 32, 35, 41).

The ALJ concluded that the claimant became disabled under Title XVI of the Social Security Act on April 16, 2013, the date she filed her application for benefits and was entitled to SSI benefits under Title XVI. But, because the ALJ found no evidence of a disability prior to her last date of insured on September 30, 2009, the ALJ found the claimant not entitled to disability insurance benefits under Title II. (R. 23, 31, 39-40).

## VI. DISCUSSION

The claimant argues that the ALJ committed reversible error by failing to call a medical advisor to the ALJ hearing to render an opinion regarding the onset date of the claimant's disability prior to her date last insured for her Title II claim pursuant to SSR 83-20. This court agrees and finds that the ALJ erred in failing to utilize a medical advisor at the hearing pursuant to SSR 83-20.

Here, the ALJ found that the claimant had a disability that began on April 16, 2013, the date the claimant filed her applications for disability. (R. 23). However, because the medical evidence predating both the last date insured and the application date is sparse, the ALJ had no relevant medical evidence prior to the date of last insured from which he could establish the onset date with a "legitimate medical basis." Instead, the ALJ inferred the onset date and arbitrarily choose the date of application as the onset date.

However, SSR 83-20 required the ALJ to call a medical advisor to the hearing to help establish the onset date, but the ALJ failed to do so. Because of this failure, the ALJ did not develop a full and fair record and this case is due to be reversed and remanded for the ALJ to follow the requirements of SSR 83-20.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is due to be REVERSED and REMANDED. The court will enter a separate Order in accordance with the Memorandum Opinion.

DONE and ORDERED this 31st day of August, 2017.

_Karon O. Bowdre_

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE